UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:24-cv-01383-SEB-MJD |
| ) | |
| $12,204,262.89 UNITED STATES CURRENCY, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |
| RICHARD W. EATON, ) | |
| NIKOLAOS E. MANOUDAKIS, ) | |
| ) | |
| Claimants. ) | |

**ORDER**

This matter is before the Court on the following motions: Claimant Manoudakis' Motion to Supplement and for Leave to File Belated Notice of Intention to File Verified Claim, [Dkt. 47]; Claimant Manoudakis' Motion to Amend Answer and Affirmative Defenses, [Dkt. 50]; and Plaintiff's Motion for Limited Stay of Proceedings, [Dkt. 54]. Each motion is resolved below.

**I.  BACKGROUND**

This is a civil forfeiture action brought by the United States of America against $12,204,262.89 in United States Currency ("the Currency") and certain real property. The USA's claims relate to an alleged fraudulent scheme by companies called Meds to You, LLC, and Meds to You FL, LLC, (collectively "Meds to You"), to bill Medicare for COVID-19 tests that were not requested by the recipients. The USA alleges that the Currency was obtained through this scheme and therefore was obtained "'by means of false or fraudulent pretenses, representations, or promises, transmit[ted] … by means of wire, … in interstate or foreign commerce … for the

purpose of executing [a] scheme or artifice[]' to defraud, 18 U.S.C. § 1343," and is "'money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services' and was 'obtain[ed], by means of false or fraudulent pretenses, representations, or promises, … to defraud any health care benefit program[.]' 18 U.S.C. § 1347." [Dkt. 1 at 31.]

The Currency was seized by the USA on August 4, 2023, and this case was filed on August 13, 2024. A Notice of Forfeiture Action was published on the website www.forfeiture.gov, which is maintained by the United States Department of Justice, for 30 consecutive days beginning August 16, 2024. *See* Dkt. 40-2. On August 19, 2024, the USA sent a Personal Notice of Complaint of Forfeiture in Rem ("the Notice") with a copy of the Complaint to six potential claimants to the Currency, including Manoudakis. [Dkt. 44.] The Notice, which contained the caption of this case, stated:

> Pursuant [to] Rule G(5)(a)(ii) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, in order to avoid forfeiture of the Defendant Currency and/or Defendant Real Property, any person who asserts an interest in the Defendant Currency and/or Defendant Real Property must file a verified claim within **thirty-five (35) days** after the date of the mailing of this notice, which is **September 23, 2024**.

*Id.* at 2 (emphasis in original). It further provided:

> Pursuant to Rule G(5)(a), the claim must (A) identify the specific property claimed; (B) identify the claimant and state the claimant's interest in the property; and (C) be signed by the claimant under penalty of perjury, see 28 U.S.C. § 1746.

*Id.* It further provided that if a verified claim was filed, the claimant must then file a response to the Complaint in this case within 21 days of filing the verified claim, and that both the verified claim and the response were to be filed in this case and served on the USA. The Notice concluded with the warning that "[f]ailure to file a claim and an answer within the specified

2

times will result in default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure." *Id.* at 3.

The Notice was delivered to Manoudakis' address via certified mail on August 24, 2024. [Dkt. 54 at 3.] On September 20, 2024, Manoudakis, who was then acting *pro se*, filed a motion for a 28-day extension of time to respond to the Complaint. [Dkt. 6.] That motion was granted, and Manoudakis' deadline to response to the Complaint was extended to October 22, 2024. [Dkt. 7.] Counsel appeared on behalf of Manoudakis on October 9, 2024; his counsel obtained two additional enlargements of time to respond to the Complaint, ultimately resulting in a deadline of November 22, 2024. [Dkt. 12, Dkt. 23.] Manoudakis filed an Answer to the Complaint on that date. [Dkt. 26.] While the Answer contains a verification section, it is not signed by Manoudakis and therefore is not verified. Manoudakis did not file, and has not to date filed, a verified claim.

On November 26, 2024, the Court entered a Case Management Plan in this case that set a deadline of February 7, 2025, for motions for leave to amend pleadings. [Dkt. 29 at 3.]

The USA and another claimant, Richard Eaton, reported on January 29, 2025, that they had resolved Eaton's claim with regard to the real property. [Dkt. 39.] That left Manoudakis' claim with regard to the Currency as the only claim remaining in the case. On February 21, 2025, the USA sought to resolve that claim by filing a Motion to Strike Nikolaos Manoudakis' Answer to Complaint, and Application for Default Judgment and Order of Forfeiture. [Dkt. 45.] The basis of the USA's motion was that Manoudakis had not filed a verified claim as required by 18 U.S.C. § 983(a)(4)(A) and Supplemental Rule for Admiralty or Maritime Claims and Asset Forfeiture Actions G(5)(a) and therefore he lacked statutory standing to pursue his claim for the

3

Currency.[1]  The USA also argued that Manoudakis lacked constitutional standing to pursue his claim as to some of the Currency because it was seized from accounts that were not held by Manoudakis.  In response to this motion, Manoudakis filed his Motion to Supplement and for Leave to File Belated Notice of Intention to File Verified Claim, [Dkt. 47], on February 26, 2025.  Manoudakis also filed a Motion to Amend Answer and Affirmative Defenses, [Dkt. 50], on March 7, 2025, seeking to assert a statute of limitations defense and the defense of failure to state a claim upon which relief may be granted.

## II.  DISCUSSION

Each of the motions before the Court are addressed, in turn, below.

**A.  Motion to Supplement [Dkt. 47]**

In his Motion to Supplement and for Leave to File Belated Notice of Intention to File Verified Claim, [Dkt. 47], Manoudakis seeks to remedy his failure to file a timely verified claim.

*1.  The Applicable Deadline for Manoudakis' Claim*

Civil forfeiture actions such as this one are governed by both a Rule—Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions Rule G ("Rule G")—and a statute—18 U.S.C. § 983.  As relevant to the instant motions, 18 U.S.C. § 983(a)(4)(A) provides:

> In any case in which the Government files in the appropriate United States district court a complaint for forfeiture of property, any person claiming an interest in the seized property may file a claim asserting such person's interest in the property in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims, except that such claim may be filed not later than 30 days after

---

[1] The USA's response to the instant motion states that "[a]s a matter of efficiency, in lieu of reiterating its arguments to the Court, Plaintiff incorporates its argument from Section II.A.1 of its Motion to Strike Claimant Manoudakis' Answer and Application for Default Judgment and Order of Default, [Dkt. 45], by reference." [Dkt. 62 at 2 n.2.]  The Court notes that it is generally not efficient for the Court to have to find, open, and read another document, rather than having all of a parties' arguments in one document.  This is especially true when, given the division of labor between district judges and magistrate judges, the judicial officer reading one brief would otherwise have no reason to read the referenced brief.

the date of service of the Government's complaint or, as applicable, not later than 30 days after the date of final publication of notice of the filing of the complaint.

Rule G, in turn, provides, in relevant part:

> (5) Responsive Pleadings.
>
> (a) *Filing a Claim.*
>
>> (i) A person who asserts an interest in the defendant property may contest the forfeiture by filing a claim in the court where the action is pending. The claim must:
>>
>>> (A) identify the specific property claimed;
>>> (B) identify the claimant and state the claimant's interest in the property;
>>> (C) be signed by the claimant under penalty of perjury; and
>>> (D) be served on the government attorney designated under Rule G(4)(a)(ii)(C) or (b)(ii)(D).

Accordingly, Manoudakis was required to file the verified notice required by Rule G within thirty days of when he was served with the Complaint in this case.

  *2. The Court's Discretion to Excuse the Missed Deadline*

There is no question that Manoudakis failed to file the verified notice required by Rule G by the applicable deadline. He acknowledges as much in the instant motion, but asks that he be granted leave to file a belated verified notice now.

The USA argues in response to the instant motion that the Court does not have the discretion to grant Manoudakis the relief he seeks:

> Even if this Court were to consider exercising its discretion to allow the belated filing, as our sister court has explained, "Rule G(5) gives courts some discretion to extend a deadline 'for good cause,' Fed. R. Civ. P. Supp. Rule G(5)(a)(ii), but § 983 limits a discretionary extension to no more than 30 days after the date of final publication of notice, 18 U.S.C. § 983(a)(4)(A)." [*United States v.*] *Funds in Amount of Approximately $170,500*, 2015 WL 1188169, at *3 [(N.D. Ill. Mar. 12, 2015)] (citing [*United States v.*] *Commodity Account No. 549 54930 at Saul Stone*

> & Co., 219 F.3d [595,] 597-598 [(7th Cir. 2000]).[2] And the last date of publication concerning the Defendant property in this case occurred on December 15, 2024. [See Dkt. 40-2 at 7.]

[Dkt. 55 at 5] (footnote added). With all due respect, the Court disagrees with the Northern District of Illinois' holding in the *Approximately $170,500* case. That court rejected the claimant's reliance on *United States v. U.S. Currency, in the Amount of $103,387.27*, 863 F.2d 555, 558 (7th Cir. 1988), in which the Seventh Circuit set forth the factors a district court should consider in deciding whether to permit a claimant to belatedly file a verified claim, finding it "unlikely" that the Seventh Circuit case's holding "survive[d] the passage of 18 U.S.C. § 983(a)(4)(A) in 2000," and reasoning that "applying Rule 6(b)'s general authorization of extensions would undo § 983's specific limit on Rule G's grant of discretion." However, just a few weeks after the decision in the *Approximately $170,500* case was issued, in deciding a case brought pursuant to 18 U.S.C. § 983(a), the Seventh Circuit reiterated that a district court had discretion to extend the deadline for filing a verified claim. *See United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607, 619 (7th Cir. 2015 ("The district court acted within its discretion when it allowed Appellees to amend their claims.") (citing *U.S. Currency, in the amount of $103,387.27*, 863 F.2d at 563); *see also United States v. $94,600 in U.S. Currency*, 681 F. App'x 491, 493 (7th Cir. 2017) (noting in case arising under 18 U.S.C. § 983(a) that "[t]he district court could have accepted McMillian's late claim but did not have to.").

This is consistent with the Advisory Committee notes to Rule G, which state the following:

---

[2] While the Northern District of Illinois case cited does contain the quoted language, it does not, in fact, cite the Seventh Circuit case for the quoted proposition. Rather, it cites the Seventh Circuit case for an entirely different proposition; there is another sentence between the end of the quote and the Seventh Circuit cite. In fact, the Seventh Circuit case does not contain the word "deadline" or the word "discretion."

> Paragraph (c)(i)(A) provides that the government may move to strike a claim or answer for failure to comply with the pleading requirements of subdivision (5) or to answer subdivision (6) interrogatories. **As with other pleadings, the court should strike a claim or answer only if satisfied that an opportunity should not be afforded to cure the defects under Rule 15.** Not every failure to respond to subdivision (6) interrogatories warrants an order striking the claim. But the special role that subdivision (6) plays in the scheme for determining claim standing may justify a somewhat more demanding approach than the general approach to discovery sanctions under Rule 37.

Advisory Committee Note to Rule G(8)(c)(i)(A) (emphasis added). Rule G was enacted in 2006, after the enactment of 18 U.S.C. § 983. The advisory notes make clear that when Rule G was enacted, it was clearly anticipated that courts would have discretion to excuse non-compliance with the statute.

This is not surprising given the general rule that unless a statutory time limit is jurisdictional, it is subject to being extended or excused by a court on equitable grounds. *See United States v. Wong*, 575 U.S. 402, 408-09 (2015). If a statutory time limit is jurisdictional,

> a litigant's failure to comply with the bar deprives a court of all authority to hear a case. Hence, a court must enforce the limitation even if the other party has waived any timeliness objection. And, more crucially here, a court must do so even if equitable considerations would support extending the prescribed time period.

*Id.* (citations omitted).

> Given those harsh consequences, the Government must clear a high bar to establish that a statute of limitations is jurisdictional. In recent years, we have repeatedly held that procedural rules, including time bars, cabin a court's power only if Congress has clearly stated as much. Absent such a clear statement, courts should treat the restriction as nonjurisdictional. That does not mean Congress must incant magic words. But traditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences.
>
> And in applying that clear statement rule, we have made plain that most time bars are nonjurisdictional. Time and again, we have described filing deadlines as quintessential claim-processing rules, which seek to promote the orderly progress of litigation, but do not deprive a court of authority to hear a case. That is so . . . even when the time limit is important (most are) and even when it is framed in mandatory terms (again, most are); indeed, that is so however emphatically

7

> expressed those terms may be. Congress must do something special, beyond setting an exception-free deadline, to tag a statute of limitations as jurisdictional and so prohibit a court from tolling it.

Id. at 409-410 (citations and quotation marks omitted). Although the time limit found in 18 U.S.C. § 983(a)(4)(A) is expressed in mandatory terms, there is nothing in the statutory language that would suggest that it is jurisdictional. Therefore, the statute does not divest the Court of the discretion to excuse Manoudakis' failure to satisfy the statutory time limit.

   *2. Manoudakis' Arguments*

Manoudakis purports to bring his motion pursuant to Federal Rule of Civil Procedure 15 and 60(B)(1). The latter is wholly unapplicable to the instant motion, as it applies, on its face, to motions for relief from "a final judgment, order, or proceeding," and no final judgment, order, or proceeding exists in this case.

Manoudakis' reliance on Rule 15(a) is more understandable, although, the Court believes, misplaced.³ Manoudakis attempts to invoke the Advisory Committee Note quoted above by fashioning his motion as one seeking to amend or supplement his **answer** "to include the Verified Claim." [Dkt. 47 at 5.] Rule G makes it clear that the verified claim and the answer to the Complaint are two separate things, however, and the fact that Manoudakis attached a verified claim to his motion, [Dkt. 47-1], not an amended answer, makes it clear that he is really seeking to file a belated verified claim which is, in fact, the relief he needs to salvage his claim. And Rule 15 cannot provide him with this relief because it relates to amendments to **pleadings**. A

---

³ Manoudakis' suggestion that he could "supplement [his] Answer to include the Verified Claim pursuant to Rule 15(d)" is completely without merit. Rule 15(d) provides for supplemental pleadings to "set[] out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." In other words, it permits a claim or counterclaim to be updated to add claims that accrued or facts that occurred after the claim or counterclaim was filed. It is simply irrelevant to Manoudakis' desire to file a belated verified claim.

verified claim is not a pleading—a term that is clearly defined in Rule 7(a). *But see United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607, 619 (7th Cir. 2015) (applying, without explanation, the Rule 15(a)(1)(2) standard to a Rule G notice). In any event, one cannot "amend" something that was never filed in the first place.

      Putting these procedural matters aside, the gist of Manoudakis' argument is that he should be permitted to file his belated verified claim because his failure to file a timely verified claim was due to excusable neglect. Manoudakis explains that he received both the Complaint of Forfeiture *In Rem*, which was filed on August 13, 2024, and the Notice of Complaint of Forfeiture *In Rem* (the "Notice"), which was dated August 19, 2024, but did not realize that they were two different things. [Dkt. 47 at 2.] Accordingly, on October 7, 2024, he forwarded the Complaint to his counsel but did not forward the Notice. *Id.* The Notice was contained in a bulk data transfer of approximately 250,000 pages that Manoudakis sent to his counsel on December 5, 2024, to aid in the litigation of his claim. *Id.* Claimant's counsel was "only able to access part of the bulk data information but was unable to access the majority of the bulk data of approximately 250,000 pages, for technical reasons, until February 7, 2025," and "Claimant's counsel was unaware until Plaintiff's February 21, 2025[,] 'Motion to Strike' that the Plaintiff had mailed to the Claimant the August 19, 2024 'Notice of Complaint of Forfeiture in Rem.'" *Id.* Manoudakis argues that "counsel's failure to discover the August 19, 2024[,] 'Notice of Complaint of Forfeiture' was inadvertent, and excusable neglect, considering the voluminous materials of approximately 250,000 pages." *Id.* at 3.

      The proper question, however, is whether Manoudakis' counsel's failure to realize prior to February 2025 that his client was required to file a verified notice of claim was excusable neglect, regardless of whether counsel saw the Notice. It was not. The very first sentence of the

9

Complaint—which counsel had in October 2024—states that this case is brought pursuant to Rule G. It is inexcusable that counsel apparently did not familiarize himself with Rule G; had he done so, he would have seen the requirement for filing a verified claim. The second sentence of the Complaint references 18 U.S.C. § 981, which is the civil forfeiture statute pursuant to which the Currency was seized. Beginning with that statute, basic legal research would have led counsel to 18 U.S.C. § 983 and its verified claim requirement. It is inexcusable that counsel did not conduct this basic legal research, at least by the time he filed Manoudakis' Answer on November 22, 2024. This is especially true in light of the fact that another claimant, Richard Eaton, filed his own verified claim on November 15, 2024, with regard to the real property that was seized by the USA, [Dkt. 20], which would have prompted a reasonable attorney who was otherwise unfamiliar with Rule G to query whether his own client should do the same.

> Manoudakis' brief contains the following paragraph:
>
> Although an attorney's inadvertent failure to comply with a filing deadline may constitute excusable neglect, there is a material distinction between an attorney's mistake of law and a mistake of fact. *See Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1355-56 (11th Cir. 2009); *Advanced Estimating Sys., Inc. v. Riney*, 130 F.3d 996, 998 (11th Cir. 1997). While an attorney error based on a misunderstanding or misinterpretation of the law generally cannot constitute excusable neglect, a mistake of fact, such as miscommunication or a clerical error, may do so under the pertinent factors. *Anthem*, 591 F.3d at 1356; *Riney*, 130 F.3d at 998-99.

[Dkt. 47 at 5.] While Manoudakis perplexingly cites to Eleventh Circuit cases, this is also the law in the Seventh Circuit.

> As the Supreme Court has stated, however, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." [*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993).] Indeed, we have noted that an "inability or refusal to read and comprehend the plain language of the federal rules" can never constitute excusable neglect. [*Prizevoits v. Indiana Bell Tel. Co.*, 76 F.3d 132, 133 (7th Cir. 1996)] (quotation marks and citation omitted).

10

*In re United Airlines, Inc.*, 318 F. App'x 429, 432 (7th Cir. 2009); *see also Satkar Hosp., Inc. v. Fox Television Holdings*, 767 F.3d 701, 706 (7th Cir. 2014) ("The excusable-neglect standard 'can never be met by a showing of inability or refusal to read and comprehend the plain language of the federal rules.'") (quoting *Prizevoits*, 76 F.3d at 133). And this is what happened here. Manoudakis' counsel either failed to read or failed to comprehend the plain language of Rule G and 18 U.S.C. § 983, which set forth the verified claim requirement. This failure was most certainly neglect, but it was, just as certainly, not "excusable."

In his reply brief, Manoudakis argues the following:

The Government argues therefore that Claimant has failed to timely file his claim to the seized Defendant Currency.

The Government's argument ignores the fact the Government's August 13, 2024[,] "Complaint for Forfeiture in Rem" was untimely. The Statute of Limitations contained in 18 U.S.C. 983(b((3) [sic] and Section 984(b) expired before the Government's August 13, 2024, "Complaint for Forfeiture in Rem" was filed. Therefore, the Government's August 19, 2024, "Notice of Complaint of Forfeiture in Rem" was a nullity as it violated Claimant Manoudakis' rights to Due Process under the 14th Amendment. Claimant cannot have failed to timely respond to an untimely notice issued in violation of 18 U.S.C section 983(a)(1)(A).

[Dkt. 65 at 2.] Setting aside the fact that "[a]n argument made for the first time in a reply brief is waived," *Eberhardt v. Walsh*, 122 F.4th 681, 687 n.4 (7th Cir. 2024) (citing *Bradley v. Village of University Park, Illinois*, 59 F.4th 887, 897 (7th Cir. 2023)), as well as the fact that Manoudakis did not raise the statute of limitations in his Answer and "it has long been recognized that a defendant's failure to plead the statute of limitations as an affirmative defense in his or her answer to the complaint constitutes a waiver of that defense," *United States v. Adent*, 821 F.3d 911, 914 (7th Cir. 2016), this argument fails on the merits.

The one-year statute of limitations set forth in 18 U.S.C. § 984(b) expressly applies only to actions "to forfeit property not traceable directly to the offense that is the basis for the

11

forfeiture." It simply does not apply to this case, in which the Complaint clearly and unequivocally alleges that the Currency is traceable to several criminal offenses.[4] [Dkt. 1 at 31.] Manoudakis also asserts that the USA failed to comply with the sixty-day notice requirement in 18 U.S.C. § 983(a)(1)(A); however, that requirement applies only to **nonjudicial** civil forfeiture proceedings, which this clearly is not.

### 3. Application of Seventh Circuit Law

None of Manoudakis' arguments support a ruling in his favor. However, the inquiry does not end there. The Seventh Circuit has not applied the excusable neglect standard to the situation at issue in the instant motion, but instead has made it clear that a district court must, in its discretion, apply the relevant factors, which include:

> the time at which the claimant became aware of the seizure, whether the Government encouraged the delay, the reasons proffered for the delay, whether the claimant had advised the court and the Government of his interest in defendant before the claim deadline, whether the Government would be prejudiced by allowing the late filing, the sufficiency of the answer in meeting the basic requirements of a verified claim, and whether the claimant timely petitioned for an enlargement of time.

*United States v. One (1) 1979 Mercedes 450SE Vehicle ID No. 116032-12-081839 License No. MKS 706*, 651 F. Supp. 351, 353 (S.D. Fla. 1987) (cited with approval in *United States v. U.S. Currency, in the Amount of $103,387.27*, 863 F.2d 555, 561 (7th Cir. 1988)). The Seventh Circuit has also stated that

> [w]here the claimants have made a good-faith effort to file a claim and where the government can show absolutely no prejudice by the granting of an extension of time, we think it an abuse of discretion to deny an extension of time to amend a claim of ownership, absent any countervailing factors. . . . This is especially true in a case where the defect is technical, where it was made by the attorney and not the claimants, and where the amount of currency is so large.

---

[4] Manoudakis notes in his brief that no criminal action is pending against him, but makes no attempt to explain why that is relevant.

*U.S. Currency, in the Amount of $103,387.27*, 863 F.2d at 563. The Court agrees with the Eleventh Circuit's characterization of the essence of the Seventh Circuit's position as follows: "The district court should be wary to not confer the sins of the attorney unto the claimant in a civil forfeiture case, especially when the prejudice to the government, if any, is slight." *United States v. $125,938.62*, 370 F.3d 1325, 1328-29 (11th Cir. 2004). This is, of course, consistent with the Seventh Circuit's "'strong policy preference for deciding cases on the merits.'" *Harris v. Melchor*, ___ F.4th ____, 2025 WL 972467, at *3 (7th Cir. Apr. 1, 2025) (quoting *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 631 (7th Cir. 2009)).

Applying these factors and principles, the Court, in its discretion, finds that Manoudakis should be granted leave to file his belated verified claim in this case. The amount of the Currency is large, the USA has been aware that Manoudakis claims an interest in the Currency since he filed his timely Answer in this case, and the USA will suffer no prejudice if the belated claim is permitted.[5] While Manoudakis' delay in seeking to file his claim is inexplicable and not insubstantial, those factors alone do not outweigh the factors weighing in favor of permitting Manoudakis' claim to proceed. Accordingly, Manoudakis' Motion to Supplement and for Leave to File Belated Notice of Intention to File Verified Claim is **GRANTED** to the extent that Manoudakis is granted leave to file a belated verified claim. Manoudakis shall file his Verified Claim, found at Docket Number 47-1, **within three days of the date of this Order**.

---

[5] The USA alleges it would be prejudiced in its response brief, [Dkt. 55 at 6], but does not explain how. The USA notes that "[u]pon the filing of a verified claim, the Government has the opportunity to propound special interrogatories to test the veracity of claimant's interest," *id.*, but the belated filing of the verified claim does not prevent it from doing so.

### B. Motion to Amend Answer

Manoudakis seeks to amend his answer because he has "now learned that his Affirmative Defenses were incomplete" and he would like to add "the affirmative defenses of the Statute of Limitations, and failure to state a claim for relief." [Dkt. 50 at 2.] This motion is **DENIED** because it fails to comply with Local Rule 15-1(a)(1), which requires "the signed proposed amended pleading" to be included as an attachment to any motion to amend a pleading. In addition, the Court notes that Manoudakis fails to acknowledge the standard applicable to his motion, which is the "good cause" standard found in Federal Rule 16(b)(4), a standard that "primarily considers the diligence of the party seeking amendment." *Trustmark Ins. Co. v. General & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) (internal quotation marks and citations omitted). Thus, Manoudakis has not even attempted to satisfy his burden of showing good cause for permitting the amendment. And, finally, as explained above, Manoudakis' proposed statute of limitations defense is without merit and therefore it would be futile to permit him to assert it.

### C. USA's Motion to Stay

In the USA's Motion for Limited Stay of Proceedings, [Dkt. 54], the USA moves to stay discovery[6] in this case pursuant to 18 U.S.C. § 981(g)(1), which provides that

> [u]pon the motion of the United States, the court shall stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case.

---

[6] Technically, the USA moves for a stay of this case in its entirety, with the exception of adjudicating the execution of the settlement agreement related to Claimant Eaton's interest in Defendant Real Property and motion practice relating to Manoudakis' failure to file a timely verified notice, which is addressed above.

The USA filed this motion to stay after receiving Manoudakis' discovery requests and determining that responding to those requests would interfere with its ongoing criminal investigation into the alleged criminal actions of Meds to You and certain individuals, including Manoudakis, that form the basis of this forfeiture action.

Manoudakis objects to the requested stay. His objection is based on his conclusion, which relies on a variety of facts and the inferences he draws from them, that "[c]learly, the Government is not contemplating a criminal prosecution against Claimant Manoudakis." [Dkt. 60 at 6.] While the USA's motion did not make it clear,[7] the USA in its reply brief states clearly and unequivocally that "Claimant Manoudakis remains a target in this criminal investigation." [Dkt. 72 at 2.] Nothing Manoudakis points to provides any basis for disregarding this representation by the USA, as well as the information provided to the court in an *ex parte* declaration as permitted by statute. *See* 18 U.S.C. § 981(g)(5) ("In requesting a stay under paragraph (1), the Government may, in appropriate cases, submit evidence ex parte in order to avoid disclosing any matter that may adversely affect an ongoing criminal investigation or pending criminal trial.").[8] The USA has demonstrated that there is an ongoing criminal investigation that is directly related to this case.

Manoudakis also argues that a stay is not necessary because a protective order would adequately protect the USA's interests. [Dkt. 60 at 11-12] (citing 18 U.S.C. § 981(g)(3)).

---

[7] As Manoudakis acknowledges in his response brief, the USA certainly implies in its opening brief that Manoudakis is under criminal investigation. *See* [Dkt. 60 at 9] (citing [Dkt. 54 at 7]).
[8] Manoudakis expresses concern that the ex parte declaration—which, of course, he is not privy to—violates a proffer agreement between him and the USA. The Court assures Manoudakis that it does not rely on any statements made by Manoudakis. It is difficult to see why it would, given that its purpose is to support the existence of a criminal investigation, not provide evidence relating to the crimes being investigated.

However, this argument is based on Manoudakis' incorrect assumption that any criminal investigation does not directly implicate Manoudakis.

Manoudakis next argues that the USA has "waived" its right to seek a stay because the USA complied with its initial disclosure obligations in this case, rather than seeking a stay from the outset. Manoudakis cites no relevant authority[9] for this proposition, which the Court rejects. The USA was entitled to—and, in fact, obligated to—litigate this case until it concluded that continuing to do so would adversely affect its criminal investigation. It was the receipt of Manoudakis' discovery requests that caused the USA to reach that conclusion and file the motion to stay. There is nothing improper about that.

Finally, Manoudakis argues that a stay—especially an indefinite stay—would violate his due process rights by delaying his ability to pursue the return of the Currency to him. While perhaps a delay could become so protracted as to implicate the due process clause, Manoudakis has not demonstrated that a delay of constitutional proportions has, or will likely, occur in this case.

The USA has satisfied its burden of demonstrating that proceeding with discovery in this case would adversely affect its ability to conduct an ongoing related criminal investigation. Accordingly, pursuant to 18 U.S.C. § 981(g)(1), the Court is required to, and therefore does, **GRANT** the motion to stay.

---

[9] Manoudakis inexplicably provides the following citation: *See In Re Matter of Grand Jury Proceedings*, 220 F.3d 568, 572 (7th Cir. 2000) *citations omitted* ("document that appears privileged may have lost that privilege through disclosure or transmittal to third party"). [Dkt. 60 at 10] (format of citation corrected). As the instant motion does not involve the assertion of any privilege, the cited case has no relevance to the issues before the Court.

## III.  CONCLUSION

For the reasons and to the extent set forth above, Claimant Manoudakis' Motion to Supplement and for Leave to File Belated Notice of Intention to File Verified Claim, [Dkt. 47], is **GRANTED** to the extent that Manoudakis is granted leave to file a belated verified claim. Manoudakis shall file his Verified Claim, found at Docket Number 47-1, **within three days of the date of this Order**.  Claimant Manoudakis' Motion to Amend Answer and Affirmative Defenses, [Dkt. 50], is **DENIED**.  The USA's Motion for Limited Stay of Proceedings, [Dkt. 54], is **GRANTED**.  All discovery is **stayed** in this case, as are the deadlines set forth in the case management plan.  Any deadlines related to the motions decided in this Order and all other pending motions remain in place, and the stay does not apply to those motions or any subsequent motions directly related to them.  **The USA shall file a Notice within ninety days of the date of this Order and every thirty days thereafter setting forth the status of the criminal investigation and any resulting prosecution**.  These filings may be made *ex parte* if necessary to avoid interference with the USA's criminal investigation.

SO ORDERED.

Dated:  23 APR 2025

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.